IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD M. YONEMOTO, | ) | CIVIL NO. 11-00533 JMS/RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION TO |
| vs. | ) | DISMISS OR FOR SUMMARY |
| | ) | JUDGMENT OF DEFENDANT ERIC |
| ERIC K. SHINSEKI, Secretary, United | ) | K. SHINSEKI, DOC. NO. 50 |
| States DEPARTMENT OF VETERANS | ) | |
| AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT OF DEFENDANT ERIC K.
SHINSEKI, DOC. NO. 50**

## I.  INTRODUCTION

In this workplace discrimination action against Defendant Eric K.

Shinseki, Secretary, United States Department of Veterans Affairs ("Defendant"),

Plaintiff Ronald M. Yonemoto ("Plaintiff") asserts that he was discriminated

against on the basis of race, national origin, and disability, and retaliated against

for engaging in protected activity in violation of Title VII of the Civil Rights Act

of 1964 and the Rehabilitation Act.  The basis of Plaintiff's claims is that over the

course of several years, the Veterans Administration ("VA"), through Plaintiff's

supervisor Dr. Michael Carethers, created a hostile work environment and took a

number of adverse employment actions against Plaintiff including, for example, refusing to assign Plaintiff meaningful work, taking away his office and placing him in a semi-public area, refusing to grant Plaintiff paid leave to engage in protected EEO activity, and refusing requested accommodations for Plaintiff's stress and diabetes.

Currently before the court is Defendant's Motion to Dismiss or for Summary Judgment, arguing that Plaintiff has failed to exhaust his administrative remedies as to several claims, and that in any event Plaintiff has failed to raise a genuine issue of material fact.  Based on the following, the court GRANTS in part and DENIES in part Defendant's Motion.

## II.  BACKGROUND

### A.    Factual Background

Prior to 2000, Plaintiff was an attorney for the Board of Veterans Appeals in Washington D.C.  Doc. No. 51, Def.'s Concise Statement of Facts ("CSF") ¶ 1.[1]  From 2000 to 2006, Plaintiff served in several capacities in the Office of the Director of the Veterans Administration Pacific - Health Care System ("VAPIHCS"), part of the VA, on the grounds of Tripler Army Medical Center

---

[1]  Where the parties do not dispute a particular fact, the court cites directly to Defendant's CSF.

("TAMC"), in Honolulu, Hawaii.  *Id.*  Since 2006, Plaintiff has served as a Health

Systems Specialist with Geriatrics, Rehabilitation and Extended Care ("GREC").

*Id.*

Throughout his employment with the VA, Plaintiff has filed a number

of EEOC Complaints against VAPIHCS.  *See* Doc. No. 51-4, Def.'s Ex. 2 at 2

(listing complaints).  Although the EEOC Complaints forming the basis of this

action were filed on July 27, 2010 and September 20, 2011, Plaintiff asserts that

the adverse actions taken against him were in retaliation for EEOC Complaints he

filed prior to and/or concerning his transfer to GREC.  The court therefore briefly

provides some background regarding Plaintiff's employment at VAPIHCS prior to

his GREC transfer,[2] and then outlines the specific events relevant to Plaintiff's

work at GREC.

### 1.    *Plaintiff's Work at VAPIHCS from 2000 through 2006*

From 2000 to 2006, Plaintiff reported directly to the Director of

VAPIHCS, a position that was held by several different individuals over this time

period.  Although Plaintiff led several major projects under VAPIHCS Director

---

[2]  Both parties outline significant details regarding Plaintiff's work at VAPIHCS prior to his transfer to GREC.  Because an understanding of the details of Plaintiff's work from 2000 to 2006 is not necessary in addressing the summary judgment issues, the court outlines facts sufficient to place into context Plaintiff's work with the VA, the EEOC charges for which Plaintiff asserts he was retaliated against, and the circumstances concerning his transfer to GREC.

David Burge and was praised for his performance from 2000 through 2004, *see* Doc. No. 63-2, Pl.'s Decl. ¶¶ 8, 9, 12; Doc. Nos. 64-1 - 64-5, Pl.'s Exs. 4-8 (performance evaluations), later Directors, including Dr. Brian O'Neill and Dr. James Hastings, noted issues with Plaintiff's work.  *See* Doc. No. 51-7, Def.'s Ex. 5 (performance evaluation noting that Plaintiff had variable "interpersonal effectiveness"); Doc. No. 51-12, Def.'s Ex. 10 at 37-45 (Hastings describing incidents he was told of regarding Plaintiff which influenced his assignments to Plaintiff).  Also over this period of time, other employees at VAPIHCS -- including those in supervisory roles -- made disparaging comments regarding Plaintiff (including making racist remarks), and expressed a desire for Plaintiff's professional demise.  *See* Doc. No. 63-2, Pl.'s Decl. ¶ 14.

In August 2005, Plaintiff applied for the Associate Director's position at VAPIHCS, and was passed over by a committee that included several individuals who were openly critical of Plaintiff.  *Id.* ¶¶ 15-19.  Plaintiff asserts that the committee failed to follow proper selection procedures to ensure that Plaintiff, the only qualified individual, would not receive the position.  *Id.*  On August 6, 2006, Plaintiff filed an EEO Complaint alleging discrimination on the basis of race, color, and sex, and reprisal for engaging in protected activity, which was all based on the alleged manipulation and irregularities in the selection process

for the Associate Director's position.  *Id.* ¶ 20; Doc. No. 64-22, Pl.'s Ex. 25.

On August 20, 2006, Hastings decided to assign Plaintiff to GREC. Doc. No. 63-2, Pl.'s Decl. ¶ 22.  Hastings asserts that he made this decision after individuals had relayed to him two or three incidents involving Plaintiff -- Hastings was told that after meeting with Plaintiff, a supervisor threatened to resign if she had to interact with him again, and the commanding general at TAMC had said Plaintiff was no longer welcome there.  *See* Doc. No. 51-12, Def.'s Ex. 10 at 37-45.  In light of this information, Hastings decided that he "could not afford to have my senior administrative officer, who spoke for me, be perceived by the people in our organization, people we do business with, in a negative way."  *Id.* at 45. Plaintiff agreed to this transfer.  Doc. No. 51-13, Def.'s Ex. 11 at 131.

### 2.   *Plaintiff's Initial Employment with GREC*

Plaintiff's supervisor at GREC is Dr. Michael Carethers.  *See* Doc. No. 51, Def.'s CSF ¶ 5.  Dr. Carethers first became aware that Plaintiff was engaged in EEO activity very soon after Plaintiff started working at GREC, when Plaintiff told him.  *Id.* ¶ 6.

At the time of Plaintiff's transfer, Carethers believed that Plaintiff could perform a range of tasks without needing much in the way of day-to-day supervision, including GS-13 or GS-14 level tasks that required significant

interaction with other VA employees and with people outside the VA.  *Id. ¶* 7.

Such tasks appear in line with the Position Description for Plaintiff's Health

Systems Specialist position, which provides:

> Primary Purpose: The incumbent reports directly to the ACOS for [GREC] and assists in developing and implementing new GREC Programs such as the Medical Foster Home program for Hawaii.  Is responsible for working with staff assigned to Non-Institutional Care (NIC) Program to establish contracting agreements and liaison with contractors/vendors.  Performs a wide range of staff work as assigned by ACOS GREC, including analytical assignments, planning (to include GREC Environment of Care and disaster planning for GREC programs and including home care program patients), tracking of GREC compliance with mandatory training requirements, GREC Inventory Control, support GREC purchase of equipment, systematic internal reviews of GREC programs (including HR staffing effectiveness evaluations and validation of workload and cost data), reviews of policies and procedures regarding contract operations.  The incumbent should have familiarity with GREC portion of VA/DoD sharing agreement, contracts, internal and external inpatient and outpatient workload and workload capture methodologies.  A working understanding of healthcare finance, VERA Model and overall GREC Program costs is also required.  Incumbent also functions as a Patient Advocate Liaison for GREC patients.
> Performs duties directly contributing to the administrative management of geriatric healthcare delivery system.  Duties require the ability to apply the specialized principles and practices of geriatric healthcare management in supporting a healthcare delivery system.  Provides comprehensive resource allocation information support decisions involving organizational funds.  Must

> be able to use KOF, DSS and Sequel-queries as well as
> having a working familiarity with quality measurement
> and other performance metrics.

Doc. No. 65-6, Pl.'s Ex. 32.

Carethers initially assigned Plaintiff to two significant GREC projects

which Carethers thought were appropriate to Plaintiff's GS-13 grade and skill

level.  Doc. No. 51, Def.'s CSF ¶ 7.  The first was a project to prepare VAPIHCS

to oversee the quality of care of veterans in the State Veterans Home being built in

Hilo.  *Id.*  Carethers hoped that Plaintiff could take lead on this project, taking over

the complex discussions and arrangements with dozens of state, federal, and

private contractor persons and entities, including high-ranking political officials.

*Id.*  The second major project was to assist in establishing a VA Medical Foster

Home Program.  *Id.*  Although Carethers acknowledged that this project was not as

complex as the first project, he asserts that it required initiative and diplomacy.

Doc. No. 51-2, Carethers Decl. ¶ 7.

### 3.    *Plaintiff's Changing Work Duties at GREC*

Carethers asserts that by August 2008, he came to the conclusion that

Plaintiff was not performing well on the two projects.  *See* Doc. No. 51-2,

Carethers Decl. ¶ 8.  Carethers further asserts that he decided to take Plaintiff off

these projects due to Carethers' personal observations and reports of others that

7

Plaintiff (1) appeared to lack the initiative Carethers expected in a GS-13

employee; (2) required detailed step-by-step guidance on things Carethers believed

he could figure out himself; and (3) appeared to alienate people due to the manner

in which he spoke to them.  *Id.*  According to Carethers, his concerns that Plaintiff

was not effective on the first project were confirmed when Wayne Valey, a VA

employee from the mainland assigned to assist with the project, raised the concern

that Plaintiff may pose a threat of workplace violence (Carethers asserts he did not

concur with this concern).  *Id.* ¶ 9; *see also* Doc. No. 51-8, Def.'s Ex. 6.[3]

Despite Carethers' explanations as to why he took Plaintiff off these

projects, Carethers testified that Plaintiff performed satisfactorily and that he

replaced Plaintiff on the first project only after it transitioned to the clinical survey

phase.  *See* Doc. No. 65-5, Pl.'s Ex. 31 at 319-28.  Because Plaintiff was not a

clinician, he was not qualified to perform the survey and even Carethers required

additional training for this phase of the project.  *Id.*  Further, Carethers rated

Plaintiff's work performance as "fully satisfactory" every year.  *See* Doc. Nos. 64-

7 - 64-11, Pl.'s Exs. 10-14.

---

[3] Plaintiff objects that Carethers' assertions regarding the Valey email lack foundation pursuant to Federal Rules of Evidence 104, 702, and 703, and is hearsay.  The court OVERRULES these objections -- Carethers may establish authenticity for his email from Valey and it requires no expert opinion.  Further, the email is not submitted for the truth of the matter asserted, but for the fact that Carethers received complaints regarding Plaintiff's work.

Once Plaintiff was taken off these two projects, Carethers asserts he came to the conclusion that Plaintiff could not be assigned work that required him to represent the VA in the community, work that required him to perform without close supervision, or work that required significant interaction with other VA employees.  Doc. No. 51-2, Carethers Decl. ¶ 10.  Carethers asserts that as a result, the work that he can give Plaintiff is sharply limited, and that he tries to give Plaintiff work with well-defined duties and does not require much discretion or initiative.  *Id.*

From August 2008 to the present, Carethers reduced Plaintiff's duties and responsibilities to the point where Plaintiff has little or no work to occupy his time more than ninety percent of the time.  Doc. No. 63-2, Pl.'s Decl. ¶ 24. Carethers has instead assigned Plaintiff "clerical and menial" work normally performed by GS-5 employees such as updating the inventory counts for the Material Safety Data Sheets, filling VAPIHCS vehicles with gasoline and getting them washed, inspecting fire extinguishers, collecting donations, and inspecting controlled substances.  *Id.* ¶ 25; *see also* Doc. Nos. 64-9 - 64-11, Pl.'s Exs. 12-14 (performance evaluations describing Plaintiff's job duties).

In response to his significantly diminished workload, Plaintiff has repeatedly requested work from Dr. Carethers, explaining that the lack of work is

causing Plaintiff stress.  *See* Doc. No. 63-2, Pl.'s Decl. ¶ 25; Doc. No. 65-7, Pl.'s

Ex. 33.  Despite these requests, Plaintiff has not received any additional work --

Carethers asserts that although he continues to look for tasks for Plaintiff both

within GREC and in other areas of the VA, Carethers is unwilling to assign him

work that requires significant initiative.  Doc. No. 51-2, Carethers Decl. ¶ 15; *see*

*also* Doc. No. 65-4, Pl.'s Ex. 30 (Carethers testifying that in response to Plaintiff's

requests for work during meetings, Carethers' response was that "I had nothing for

you now, Ron").

### 4.    *Plaintiff's Office Move*

In April 2010, Carethers moved Plaintiff from a private office to a

semi-public space where patients and staff congregate and near a malfunctioning

alarm that goes off sporadically.  Doc. No. 63-2, Pl.'s Decl. ¶ 27; *see also* Doc. No.

65-9, Pl.'s Ex. 35.  Carethers told Plaintiff that he needed to move immediately,

and laughed when he saw that Plantiff was upset.  Doc. No. 63-2, Pl.'s Decl. ¶ 27.

Carethers asserts that this move was part of a major reshuffling of

work areas caused by the increase in employees, that Plaintiff was required to

move so that an incoming doctor could have an office, and that all offices were

occupied by one or more doctors, supervisors who needed privacy to counsel

employees, persons who needed to keep confidential information under lock and

key, or persons who needed privacy to make confidential medical communications.

Doc. No. 51-2, Carethers Decl. ¶¶ 11-12.  Although Carethers told Plaintiff that the

loss of an office would be temporary, the workforce has continued to grow and no

office is available.  *Id.* ¶ 13.

Plaintiff asserts that his workplace, with no privacy, makes it difficult

for him to administer his insulin, monitor his blood sugar, and work.  Doc. No. 63-

2, Pl.'s Decl. ¶ 27.  Plaintiff further asserts that there are open offices in patient

wings that could have been assigned to doctors and would have allowed Plaintiff to

retain his office.  *Id.*

### 5. *Request for Authorized Absence*

On June 15, 2010, Plaintiff requested that Lavern Spillane, Carethers'

administrative officer, grant him Authorized Absence ("AA") (*i.e.*, leave with pay)

to attend an interview with an EEO counselor at the office of Plaintiff's attorney on

June 16, 2010 at 10:00 a.m.  *See* Doc. No. 65-13, Pl.'s Ex. 39.  The VA Handbook

provides that employees "are entitled to a reasonable amount of official time to

present the complaint and to respond to VA requests for information," and that

employees "shall be in duty status when their presence is authorized or required by

EEOC or VA officials in connection with the complaint."  Doc. No. 65-12, Pl.'s

Ex. 38.  Spillane responded that she would approve only Administrative Leave

(*i.e.*, unpaid leave), and refused to provide Plaintiff a reason for her decision when asked.  *Id.*

On June 16, 2010 at 10:12 a.m. (*i.e.*, after Plaintiff's interview was set to take place), Spillane emailed Plaintiff that he is granted AA for one hour and that she would not grant AA for a longer period of time given that the interview could have been conducted on site in a private office.  *Id.*  Although Carethers was not in the office at this time, he concurred with Spillane's decision on the basis that the interview was conducted by telephone and all parties could have participated by phone.  *See* Doc. No. 51-2, Carethers Decl. ¶ 15.

### 6. *Plaintiff's July 27, 2010 EEOC Complaint*

On June 10, 2010, Plaintiff contacted the EEOC, and on July 27, 2010, Plaintiff filed an EEOC Complaint.  *See* Doc. No. 51-3, Def.'s Ex. 1.  The EEOC Complaint asserts that the bases for his claims are "reprisal" and "hostile working condition," and explains them as follows:

> My EEO claims are based on reprisal and hostile working environment when I was assigned to a very tiny and noisy workspace (20 sq. ft.) only partially enclosed, without telephone or door; that there is a loud TV on the wall just outside my workspace which opens out to a noisy outpatient waiting area; and that the workspace has an alarm directly above my chair that emits a loud, beeping, and annoying shrill intermittently thoughout my day at CLC/CFA. . . .
> I am not assigned meaningful work or duties.  I am

> prevented from the duties listed in my job description and
> in my performance plan. . . .
> Denied Authorized Absence for the travel time portion to
> be present at my attorney's office for a telephone
> conference with the ORM EEO Counselor on June 16,
> 2010.

*Id.*

### 7. *Carethers' AWOL Charge*

In September 2010, Carethers charged Plaintiff with being absent

without leave on September 27, 2010 because Plaintiff failed to notify Carethers

that he would be out of the office.  Doc. No. 51, Def.'s CSF ¶ 13.  After Plaintiff

produced records from his telephone company indicating that he had called the

office, Carethers rescinded the AWOL charge.  *Id.*  Plaintiff asked that the VA

reimburse him $150 that he had paid to obtain the records, but Dr. Carethers was

informed by an administrator, Gary Van Brocklyn, that there was no authority for

reimbursement.  *Id.*

Although this event occurred after Plaintiff's July 27, 2010 EEOC

Complaint, the circumstances regarding this event were investigated during the

EEOC investigation.  *See* Doc. No. 51-4, Def.'s Ex. 2 at 7.

### 8. *Plaintiff's Request for Sick Leave*

In November 2010, Plaintiff obtained a letter from his doctor Jennifer

Loh, requesting sick leave for Plaintiff.  In her November 23, 2010 letter, Dr. Loh

states that Plaintiff is under her care for diabetes, that work-related stress has negatively impacted his ability to care for his diabetes and health, and that Plaintiff needs ninety days of sick leave after which time he would be reevaluated.  Doc. No. 51-10, Def.'s Ex. 8.  The letter is addressed "To Whom it May [C]oncern," and states that "[i]f you have any questions or concerns, please don't hesitate to contact me."  *Id.*

Carethers was not previously aware of Plaintiff's diabetes, and called Dr. Loh to obtain information to evaluate the sick leave request.  Doc. No. 51-2, Carethers Decl. ¶ 14.  Dr. Loh testified that Carethers identified himself as a doctor with the VA, leading her to the impression that Carethers was also treating Plaintiff.  Doc. No. 66-2, Pl.'s Ex. 43 at 15-25.  As a result, Dr. Loh provided Carethers information she would not have otherwise provided without Plaintiff's express consent.  *Id.*

Carethers approved the 90-day sick-leave request and all subsequent requests until Plaintiff's return to work in April 2012.  Doc. No. 51-2, Carethers Decl. ¶ 18.

### 9.   *Plaintiff's Requests for Accommodations*

While Plaintiff was on sick leave, Dr. Loh requested several accommodations for Plaintiff to return to work, including (1) being able to

14

regularly walk at work; (2) to have an appropriate place at work to take his blood sugar levels and his insulin; (3) providing Plaintiff a reasonably quiet area to work; (4) giving Plaintiff assignments/tasks commensurate with his grade level; and (5) avoiding social isolation and providing reasonable opportunity to socialize with peers and VA patients as his work allows.  *See* Doc. No. 70-3, Def.'s Ex. 13.

In a June 24, 2011 letter to Plaintiff, Carethers addressed the requested accommodations by stating:

a. As with other employees, you can walk during your defined breaks and lunch time in the appropriate areas.

b. As with other diabetic employees, you can do finger-stick testing at your desk or in bathrooms. The CFA is slated to have mounted needle disposal containers installed in some bathrooms.

c. As with other employees your workplace will meet Federal Standards for Noise Levels.

d. As with other employees, you may already socialize at appropriate times and places that do not disrupt the workplace.

e. What you are requesting is already available to you without completion of an interactive process to determine whether you are a qualified individual covered by the Rehabilitation Act.  In other words, Dr. Loh's suggested working conditions exist for all employees including you. Please let me know if you desire to engage further in the interactive process necessary to determine whether or not you are a qualified individual with a disability covered under the Rehabilitation Act. If you do, I will seek further guidance from HR as to what information and steps are required.

Doc. No. 51-11, Def.'s Ex. 9.

>   In responding to and denying Plaintiff's requests for accommodations, Carethers failed to follow VA policy by using the proper forms, documenting his responses, and timely responding. Doc. No. 66-3, Pl.'s Ex. 44, at 48-50.

### 10.    *Plaintiff's September 20, 2011 EEOC Complaint*

>   On August 17, 2011, Plaintiff contacted the EEOC, and on September 20, 2011, Plaintiff filed a second EEOC Complaint. Doc. No. 67-2, Pl.'s Ex. 52. The September 20, 2011 EEOC Complaint asserts that the basis for his claims is "Disability (physical and mental)," and that the date of occurrence is "today, and continuous since 11-29-10." The EEOC Complaint explains:

>>   I am employed as a Health Systems Specialist, GS-0671-13, with the [VA's VAPIHCS]. I have been assigned to work under Dr. Michael Carethers . . . since 2006. My diagnoses include Major Depressive Disorder, which has sometimes been (Recurrent) and sometimes (In Remission). I also have Type 2 Diabetes. . . .
>>   My symptoms and overall medical condition have deteriorated over the past couple of years, such that on November 23, 2010, Dr. Jennifer Loh, an endocrinologist at Kaiser Permanente, placed me on 90 days sick leave, and I have been on leave ever since then. My sick leave has run out and I am now on LWOP.
>>   On February 24, 2011, Dr. Jennifer Loh wrote a letter for my supervisor requesting specific work related accommodations in order for her to release me to work. Among the conditions were (a) providing me with "a reasonably quiet area to work," (b) giving me "assignments/tasks commensurate with [my] grade

16

level," and (c) avoiding "social isolation" and providing
"reasonable opportunity to socialize with peers and VA
patients as [my] work allows."
We provided that letter to my agency and, in the
alternative, we suggested/proposed that the agency
should allow me to remain home on paid Administrative
Leave, save for those actual hours of assigned work
(being 8-11 hours per month as assigned the past couple
of years) so as to maintain my health (by avoiding the
adverse effects fo enforced, day-long social isolation and
idleness); and that I would also come in at any time upon
being called that I am needed for other specific assigned
work/tasks/duties.

*Id.*

## B.    Procedural Background

Plaintiff filed this action on August 31, 2011, and his October 10,

2012 FAC asserts claims for: (1) race and national origin discrimination in

violation of Title VII (Count I); (2) retaliation in violation of Title VII (Count II);

(3) disability discrimination in violation of the Rehabilitation Act (Count III); and

(4) retaliation in violation of the Rehabilitation Act (Count IV).

On November 22, 2013, Defendant filed his Motion to Dismiss or for

Summary Judgment.  Doc. No. 50.  Plaintiff filed an Opposition on February 7,

2014, Doc. No. 62, and Defendant filed a Reply on February 14, 2014.  Doc. No.

70.  A hearing was held on February 24, 2014.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

carried its burden under Rule 56[(a)] its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts [and] come forward

with specific facts showing that there is a *genuine issue for trial*."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

> "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  <u>DISCUSSION</u>

Defendant's Motion raises two main arguments -- (1) that Plaintiff has impermissibly expanded his claims in this action beyond those contained in his EEOC Complaints and/or made part of the resulting EEOC investigations, and (2) Plaintiff cannot establish a genuine issue of material fact in support of any of his claims. The court addresses each of these arguments.

## A.      Scope of Plaintiff's Claims

The scope of Plaintiff's claims in this action has been a moving target -- the EEOC Complaints, the FAC, and now Plaintiff's Opposition to Defendant's Motion contain ever expanding allegations that form the basis of Plaintiff's claims.

Specifically, the July 27, 2010 EEOC Complaint asserts claims of "reprisal" and "hostile working condition" based on (1) Plaintiff's reassignment into a semi-public workspace; (2) the lack of meaningful work assignments; and (3) the June 16, 2010 denial of AA to attend a teleconference at his attorney's office with an EEO counselor.  *See* Doc. No. 51-3, Def.'s Ex. 1.  The subsequent EEO investigation also included Plaintiff's assertions regarding Carethers' September 2010 AWOL charge against Plaintiff, resulting in Plaintiff incurring $150 to prove he called work.  *See* Doc. No. 51-4, Def.'s Ex. 2 at 7.  The September 20, 2011 EEOC Complaint asserts that since November 29, 2010, Plaintiff has been discriminated on the basis of disability (diabetes and major depressive disorder) and that he requested reasonable accommodation on February 11, 2011.  *See* Doc. No. 67-2, Pl.'s Ex. 52.

In comparison, the FAC alleges claims based on retaliation, and race, national origin, and disability discrimination, and includes many allegations not specifically asserted in the EEOC Complaints, including that (1) "beginning in

2006," Carethers has refused to grant AA on various occasions for Plaintiff to attend EEOC conferences and proceedings, Doc. No. 18, FAC ¶ 37; (2) Carethers invaded Plaintiff's privacy by speaking to Dr. Loh regarding Plaintiff's medical issues, *id.* ¶¶ 57-60; and (3) Plaintiff made additional requests for reasonable accommodation after the September 15, 2011 EEOC Complaint, which were all ignored. *Id.* ¶¶ 69-70.  Plaintiff's Opposition goes even further, including new allegations that (1) Plaintiff was "subjected to a frivolous Inspector General's investigation that could have led to his prosecution . . . and termination," Doc. No. 62, Pl.'s Opp'n at 15; (2) Plaintiff's requests for reasonable accommodations date back to June 26, 2009, *id.* at 30; and (3) Carethers refused to modify Plaintiff's work schedule to allow Plaintiff to start and leave work one half hour earlier.  *Id.* at 10-11.

Defendant argues that many of Plaintiff's expanding claims were not asserted in the EEOC Complaints and therefore cannot be asserted in this action because such claims were not exhausted and/or are untimely.  The court first outlines the relevant legal principles regarding exhaustion and timeliness of claims, and then applies these principles to Plaintiff's claims.

///

///

21

### 1.    *Legal Principles Regarding Exhaustion and Timeliness*

For the court to have federal subject matter jurisdiction over a Title

VII claim, Plaintiff must have first exhausted his EEOC administrative remedies

with respect to that claim.  *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.

1994); *see also Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir.

2008); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  Similarly, a federal

employee filing a claim of disability discrimination under the Rehabilitation Act

must first exhaust administrative remedies available under Title VII.  *See*

*Vinieratos v. U.S. Dept. of Air Force*, 939 F.2d 762, 773 (9th Cir. 1991) (citing

*Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985)).  An EEOC

remedy has been exhausted for a given claim where "that claim fell within the

scope of the EEOC's *actual* investigation or an EEOC investigation which *can*

*reasonably be expected* to grow out of the charge of discrimination."  *Farmer*

*Bros. Co.*, 31 F.3d at 899 (internal quotations and citation omitted).

The exhaustion analysis often turns on what is asserted in the EEOC

charge, which must be construed "with utmost liberality since [it is] made by those

unschooled in the technicalities of formal pleading."[4]  *B.K.B. v. Maui Police Dep't*,

---

[4]  Although Plaintiff was represented by counsel in filing his EEOC Complaints,
Defendant assumes that the "utmost liberality" standard applies.  *See* Doc. No. 50-1, Def.'s Mot.
at 7.

276 F.3d 1091, 1100 (9th Cir. 2002).  With that said, however, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."  *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989); *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012); *See also Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981) ("The charge must at least describe the facts and legal theory with sufficient clarity to notify the agency that employment discrimination is claimed." (quotations and citations omitted)).  In determining whether a new claim is like or reasonably related to the allegations in the EEOC charge, the court should consider:

> such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.  In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B.*, 276 F.3d at 1100 (citation omitted).

A related principle is that of timeliness.  Federal law mandates that federal employees such as Plaintiff report alleged discriminatory actions to the

EEOC within forty-five days of the discrete act of discrimination at issue.  *See Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) ("An employee of the federal government who believes that she has been the subject of unlawful discrimination must 'initiate contact' with an EEO Counselor in her agency 'within 45 days of the date of the matter alleged to be discriminatory.'" (quoting 29 CFR § 1614.105(a)(1))).  "[F]ailure to comply with this regulation [is] fatal to a federal employee's discrimination claim." *Lyons*, 307 F.3d at 1105.

In determining whether a claim is timely, there is a distinction between discrete acts of discrimination and/or retaliation, versus hostile work environment claims.  A discrete act consists of an unlawful practice that "occurred" on the day it "happened," which includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 114 (2002).  In comparison, hostile work environment claims are "different in kind from discrete acts," because they "are based on the cumulative effect of individual acts," "occur[] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

*Morgan* explains that a plaintiff may assert claims for discrete acts

24

only if the plaintiff timely filed an EEOC Complaint for that particular act:

> [D]iscrete discriminatory acts are not actionable if time
> barred, even when they are related to acts alleged in
> timely filed charges.  Each discrete discriminatory act
> starts a new clock for filing charges alleging that act.
> The charge, therefore, must be filed within the [relevant
> statutory] time period after the discrete discriminatory act
> occurred.  The existence of past acts and the employee's
> prior knowledge of their occurrence, however, does not
> bar employees from filing charges about related discrete
> acts so long as the acts are independently discriminatory
> and charges addressing those acts are themselves timely
> filed.  Nor does the statute bar an employee from using
> the prior acts as background evidence in support of a
> timely claim.

*Id.* at 113.

In comparison, because hostile work environment claims do not

happen on a particular day as with discrete acts, but instead develop over time, the

events making up a hostile work environment claims are not limited to those within

the limitations filing period.  *Morgan* explains:

> It does not matter, for purposes of the statute, that some
> of the component acts of the hostile work environment
> fall outside the statutory time period.  Provided that an
> act contributing to the claim occurs within the filing
> period, the entire time period of the hostile environment
> may be considered by a court for the purposes of
> determining liability. . . .   In order for the charge to be
> timely, the employee need only file a charge within [the
> relevant time period] of any act that is part of the hostile
> work environment.

*Id.* at 117-18; *see also Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006).

Although *Morgan* discusses the continuing violation doctrine in the context of Title VII, the Ninth Circuit has applied its reasoning equally to claims under the Rehabilitation Act. *See Cherosky v. Henderson*, 330 F.3d 1243, 1246-47 (9th Cir. 2003) (holding that denial of employees' request for respirators under the Rehabilitation Act was a discrete act of discrimination under *Morgan*).

### 2.   *Application*

#### a.   *Failure to exhaust race and national origin claims*

Neither EEOC Complaint that is the basis of this action asserts claims for race or national origin discrimination. As a result, Defendant argues that Plaintiff's national origin and race discrimination claim, Count I, fails for lack of exhaustion. Doc. No. 50-1, Def.'s Mot. at 7-8; *See also Farmer Bros. Co.*, 31 F.3d 899. In response, Plaintiff concedes this claim is not ripe for adjudication. *See* Doc. No. 62, Pl.'s Opp'n at 26-27. The court therefore GRANTS Defendant's Motion for Summary Judgment on Count I of the FAC.

#### b.   *Timeliness of discrete acts*

For the respective EEOC Complaints, Plaintiff made initial contact with the EEOC on June 10, 2010, and August 17, 2011. Thus, to be timely, the

discrete acts which are the basis of Plaintiff's claims must have occurred on or after April 26, 2010 for the June 10, 2010 EEOC Complaint, or on or after July 2, 2011 for the August 17, 2011 EEOC Complaint.[5]  Defendant argues, and the court agrees, that many of Plaintiff's claims are based on discrete acts which occurred before these dates and are therefore untimely.

Applying *Morgan*, some of Plaintiff's claims alleged in the EEOC Complaints are discrete acts that occurred more than forty-five days before Plaintiff's first contacts with the EEOC.  Specifically, Plaintiff's allegation that he was moved out of his office and into a semi-public area (asserted in the July 27, 2010 EEOC Complaint), and that he was denied the reasonable accommodations requested in Dr. Loh's February 24, 2011 letter (asserted in the September 15, 2011 EEOC Complaint) are discrete acts -- these events are actionable in and of themselves at the time of the occurrence.[6]  Further, these events occurred more

---

[5]  At the February 24, 2014 hearing, Defendant agreed that even though the forty-five day window runs from the date of first contact with the EEOC, events that occur between the first contact and the filing of an EEOC Complaint are likewise timely.  Further, this timeliness analysis affects only those events that occurred before the filing of an EEOC Complaint.  As described below, the parties did not address claims that occurred *after* the EEOC Complaints were filed, which raise issues of exhaustion rather than timeliness (in particular, as to the disability claims).

[6]  *See, e.g.*, *Cherosky*, 330 F.3d at 1245 (holding each denial of an employee's reasonable accommodation under the Rehabilitation Act constitutes a discrete act of alleged discrimination); *Mayers v. Laborers' Health & Safety Fund*, 478 F.3d 364, 368-69 (D.C. Cir. 2007) (holding that a claim for failure to accommodate did not constitute a continuing violation); *Block v. Solis*, 2010 WL 2079688, at *11 (W.D. Wash. May 20, 2010) *aff'd* 436 Fed. Appx. 777 (9th Cir. 2011) (continued...)

than forty-five days before Plaintiff's initial contacts with the EEOC -- the FAC

asserts that the office move occurred on April 20, 2010, *see* Doc. No. 18, FAC

¶ 46, and Carethers denied Plaintiff's requested accommodations in a June 24,

2011 letter. *See* Doc. No. 51-11, Def.'s Ex. 9; *see also Tobin v. Liberty Mutual*

*Ins. Co.*, 553 F.3d 121, 130-31 (1st Cir. 2009) (holding that the denial of a disabled

employee's request for accommodation is a discrete act which starts the clock

running for the statute of limitations on the day it occurs and the timeliness of a

plaintiff's claim "turns solely on whether an actionable denial of his request for

accommodations occurred during the limitations period."). And in opposition,

Plaintiff does not dispute that these events occurred outside the applicable forty-

five day window for either EEOC Complaint. Thus, the court finds that these

discrete acts claims are untimely.

Plaintiff's claims regarding discrete acts that were not articulated in

either EEOC Complaint and which likewise appear untimely include (1) Plaintiff's

---

[6](...continued)
("Ms. Block's transfer to the fifth floor and the DOL's denial of her request for accommodation constitute discrete acts that must be separately exhausted."); *Bernstein v. City of Atlantic City*, 2011 WL 2559369, at *5 (D. N.J. June 27, 2011) (finding that "removal of [plaintiff's] privileges regarding the city vehicle and removal from her office to a cubicle[] are discrete acts"); *Sgro v. Bloomberg L.P.*, 2008 WL 918491, at *5-6 (D. N.J. Mar. 31, 2008), *aff'd in part, rev'd in part* 331 Fed. Appx. 932 (3rd Cir. 2009) (noting that an office move to an undesirable location is a discrete act and not subject to the continuing violation doctrine); *Fol v. City of New York*, 2003 WL 21556938, at *4 (S.D.N.Y. Jul. 9, 2003) (determining that rejection of an employee's request for a more ergonomic work station is a discrete act).

2008/2009 criminal investigation by individuals at the VA, *see* Doc. Nos. 66-4 - 66-7, Pl.'s Exs. 45-48; (2) the denials of AA starting in 2006 (other than the June 16, 2010 denial asserted in the July 27, 2010 EEOC Complaint); and (3) Carethers' December 2010 phone call to Dr. Loh breaching Plaintiff's privacy.[7] Each of these events "constitutes a separate actionable unlawful employment practice" such that Plaintiff was required to assert them in an EEOC Complaint. *See Morgan*, 536 U.S. at 114. These events were not included in any EEOC Complaint before the court, and they fall well outside the forty-five day window for either EEOC Complaint.[8]

---

[7] *See, e.g.*, *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (determining that discrete acts included "refusing to grant Porter's requests for vacation or holidays, requiring Porter to be tested for tuberculosis by her own physician, threatening disciplinary action while she was on medical leave, leaving a negative performance evaluation in her personnel file, and instructing her to enter the work site through the back gate"); *Ramos-Boyce v. Fordham Univ.*, 419 F. Supp. 2d 469, 472 (S.D.N.Y. 2005) ("Placing plaintiff on leave was a discrete act affecting h[is] employment."); *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D. D.C. 2005) (holding that placement on administrative leave is a discrete act requiring exhaustion); *Mallard v. Battelle Energy Alliance, LLC*, 2013 WL 2458620, at *6 (D. Idaho June 6, 2013) (equating administrative leave with suspension, which *Morgan* listed as an example of a discrete act).

[8] The court further rejects the allegations regarding the criminal investigation for the additional reason that Plaintiff cannot assert wholly new claims for the first time in opposition to summary judgment. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (determining that defendant did not have adequate notice of new ADA claims asserted for first time in opposition to summary judgment). For this same reason, the court finds that Plaintiff cannot base his disability claim on the new allegation, raised for the first time in his Opposition and not alleged in the FAC, that Plaintiff's request to start and leave work one half hour earlier was denied. The court notes, however, that such assertion was part of the EEOC investigation for the July 27, 2010 Complaint, *see* Doc. No. 51-4, Def.'s Ex. 2 at 6, and whether Plaintiff can amend his claims at this late date is an issue not presently before the court.

In opposition, Plaintiff argues that the untimely events described above are all part of his hostile work environment claims, and that the untimely events are therefore properly part of his claims because at least one act constituting his hostile work environment claims occurred within forty-five days of his initial contact with the EEOC.[9]  *See* Doc. No. 62, Pl.'s Opp'n at 25-26.  But Plaintiff's argument ignores *Morgan's* teaching that discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 113.  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," *id.*, meaning that a plaintiff must file charges relating to each discrete discriminatory act within the limitations period provided.  *See Cherosky*, 330 F.3d at 1245-47 (declining to treat a series of related employment decisions as a pattern or practice and instead finding that each decision was a discrete act); *Moore v. King Cnty. Fire Prot. Dist. No. 26*, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31, 2005) ("*Morgan* compels the conclusion that the universe of 'discrete acts,' each of which could support a separate retaliation claim, is mutually exclusive of the universe of acts that can comprise a hostile work environment

---

[9]  Despite this argument in his Opposition, Plaintiff's counsel conceded at the February 24, 2014 hearing that discrete acts occurring more than forty-five days prior to his first contact with the EEOC were not timely, and that he simply included these untimely events (or at least some of them) to place into context the timely acts.  Given Plaintiff's lack of clarity on these issues, the court addresses Plaintiff's arguments made in opposition to ensure a clear record.

claim.").

Porter v. California Department of Corrections, 419 F.3d 885 (9th Cir. 2005), is instructive.  In determining the timeliness of plaintiff's hostile work environment claim containing allegations of both discrete acts and non-discrete acts, Porter relied on Morgan's instruction that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 893 (quoting Morgan, 536 U.S. at 113).  Porter therefore sorted the plaintiff's allegations between discrete acts and non-discrete acts, and then considered only the non-discrete acts in determining whether the sexual harassment claim was timely.  Id. at 893-94.  Porter colorfully explained:

> [W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment.  If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts.

Id. at 893.  Porter ultimately concluded that the plaintiff provided sufficient evidence that the timely non-discrete events involved the same type of activity as the earlier non-discrete events such that all the non-discrete acts could be considered as part of the hostile work environment claim.  Id. at 894.

Thus, Porter teaches that Plaintiff's allegations of discrete acts are

31

separate from the allegations of non-discrete acts making up his hostile work environment claim, and that merely asserting otherwise untimely discrete acts as part of a hostile work environment claim does not make them timely. *See also Rekow v. Sebelius*, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011) (collecting various cases standing for the proposition that "[b]ecause the Supreme Court has explicitly differentiated between discrete employment acts and a hostile work environment, many courts have concluded that a discrete act cannot be part of a hostile work environment claim and instead constitutes a separate unlawful employment practice" (quotations omitted)); *Montoya v. Regents of Univ. of Cal.*, 2010 WL 2731767, at *7 (S.D. Cal. July 9, 2010) (describing that under *Porter* "the only way to state a hostile environment claim under current Ninth Circuit law is to allege a timely non-discrete act"); *Picouto v. W. Star Truck Plant Portland LLC*, 2010 WL 3607956, at *25 (D. Or. May 27, 2010), *report and recommendation adopted as modified*, 2010 WL 3607913 (D. Or. Sept. 13, 2010).[10]

----

[10]   Although bound by *Porter* to the extent it addresses the scope of discrimination and hostile work environment claims that are based on untimely events, the court recognizes that in other contexts, the Ninth Circuit has considered discrete acts as part of a hostile work environment claim. *See, e.g.*, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1108 (9th Cir. 2004) (discussing denials of overtime as part of hostile work environment claim). Indeed, where a supervisor is the alleged bad actor, it makes sense that the hostile work environment claim may involve both non-discrete acts (such as insults and disparaging remarks) as well as discrete acts (such as denying promotions or leave requests). Further, *Porter* has been criticized to the extent

(continued...)

The court further rejects Plaintiff's argument, made at the February 24, 2014 hearing, that his disability claim relates back to the July 27, 2010 EEOC Complaint and its EEOC investigation.  In particular, the EEOC Investigative Summary states that Plaintiff testified that he had informed Carethers that the lack of work was stressful for Plaintiff, and that his office move "has caused him continual stress that has caused his blood sugar levels to go 'wacky.'"  *See* Doc. No. 51-4, Def.'s Ex. 2 at 4, 6.  But this testimony, buried in a thirteen-page Investigative Summary, does not suggest that Plaintiff was asserting a disability claim as part of his July 27, 2010 EEOC Complaint.  Rather, the July 27, 2010 EEOC Complaint asserted claims for "reprisal" and "hostile working condition" based on the lack of meaningful work, his office move, and the denial of authorized leave on June 16, 2010.  *See* Doc. No. 51-3, Def.'s Ex. 1.  And although

---

[10](...continued)
it suggests that a hostile work environment claim must be based solely on non-discrete acts.  *See, e.g.*, *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) ("[A]lthough a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."); *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim. The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim."); *Royal v. Potter*, 416 F. Supp. 2d 442, 451 (S.D.W. Va. 2006) ("[T]his Court does not read the *Morgan* decision as eliminating discrete acts from consideration in determining hostile work environment claims with non-discrete acts. The *Morgan* opinion does not command district courts to literally divide the alleged discriminatory acts into two separate lists, one for discrete and one for non-discrete, as done by the Ninth Circuit.").  Regardless, this court is bound by *Porter*.

the Investigatory Summary mentioned Plaintiff's testimony regarding stress and

his blood sugar, it identified Plaintiff's claims as for reprisal and hostile work

environment based on the lack of meaningful work and the office move.  Doc. No.

51-4, Def.'s Ex. 2 at 1-2.  Nowhere in either the July 27, 2010 EEOC Complaint or

the Investigative Summary did Plaintiff ever assert that he was discriminated

against because of his stress and/or his "wacky" blood sugar, or that he requested

and was denied an accommodation for these conditions.

       Confirming that Plaintiff did not assert a disability claim in his July

27, 2010 EEOC Complaint is that Carethers was not even aware that Plaintiff had

any disability -- it is undisputed that Carethers did not know of Plaintiff's diabetes

until Dr. Loh's November 23, 2010 letter requesting sick leave, and Plaintiff's

2009 emails to Carethers asserting that the lack of work was causing him stress do

not suggest that Plaintiff was asserting that his stress was a disability that required

accommodation (and in any event such emails fell well outside the forty-five day

window of the July 27, 2010 EEOC Complaint).  Indeed, Plaintiff's September 20,

2011 EEOC Complaint asserted disability discrimination starting since November

29, 2010, *see* Doc. No. 67-2, Pl.'s Ex. 52, suggesting that Plaintiff was not disabled

and/or was not discriminated against because of his disability until this date.  The

court therefore finds that any claims of disability discrimination are wholly

separate from the retaliation and hostile work environment claims set for in the July 27, 2010 EEOC Complaint and are not like or reasonably related to such claims. *See Lyons*, 307 F.3d at 1104; *Shelley*, 666 F.3d at 606.

Finally, the court rejects Plaintiff's remaining arguments. Specifically, Plaintiff argues that his Rehabilitation Act claims do not require exhaustion. *See* Doc. No. 60, Pl.'s Opp'n at 27. Plaintiff fails to cite any legal support for this proposition, and the law clearly provides otherwise. *See, e.g.*, *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003) ("The district court properly held that Leong was required to exhaust his administrative remedies with the EEOC before pursuing his Rehabilitation Act claim in district court."). Plaintiff also argues that Defendant waived any exhaustion argument when Defendant failed to deny this allegation in the FAC. *See* Doc. No. 62, Pl.'s Opp'n at 21. Instead, Defendant stated that this allegation in the FAC is a conclusion of law to which no answer is required. Doc. No. 19, Answer ¶ 83. Defendant's Answer is correct -- the FAC's allegation that Plaintiff exhausted administrative remedies is a legal conclusion not requiring an answer, and in any event Defendant asserted the affirmative defense of failure to exhaust. *See* Doc. No. 19, Answer at 14.

The court therefore GRANTS Defendant's Motion to the extent it argues that many of Plaintiff's claims are for discrete acts for which Plaintiff failed

to file a timely charge with the EEOC.  Stripping away the untimely claims,

remaining is Plaintiff's retaliation and hostile work environment claims based on

the denial of meaningful work assignments (which Defendant conceded was an on-

going violation, Doc. No. 50-1, Def.'s Mot. at 9), the denial of paid leave on June

16, 2010 (part of the July 27, 2010 EEOC Complaint), and the AWOL charge and

refusal to reimburse Plaintiff $150 for his September 27, 2010 absence

(investigated by the EEOC as part of the July 27, 2010 EEOC Complaint).  This

determination, however, does not prevent Plaintiff from presenting evidence of

untimely discrete acts "for purposes of placing non-discrete acts in the proper

context" for the hostile work environment claim.  *See Porter*, 419 F.3d at 893 n.4

(citing *Morgan*, 536 U.S. at 113).

    As to Plaintiff's disability claims, to the extent Plaintiff is asserting a

denial of reasonable accommodation claim based on the February 24, 2011 letter

from Dr. Loh, it is untimely because Defendant responded on June 24, 2011, which

is outside forty-five days of Plaintiff's first contact with the EEOC (on July 2,

2011) regarding his disability claim.  The FAC includes additional allegations,

however, that Plaintiff made other requests for accommodation after the June 24,

2011 letter, which were all ignored and/or denied.  *See* Doc. No. 18, FAC ¶¶ 69-75.

The parties failed to present any evidence regarding these requests, much less any

36

argument as to whether these denials of accommodation are reasonably related to the September 20, 2011 EEOC Complaint such that they are properly part of Plaintiff's claims before this court. *See also Cherosky*, 330 F.3d at 1248 (explaining that each denial of an accommodation restarts the time period for EEOC consultation). The court therefore leaves open what aspects of Plaintiff's Rehabilitation Act claims, Counts III and IV of the FAC, remain in this action.[11]

## B. Whether Plaintiff Established a Genuine Issue in Support of His Claims

Defendant seeks summary judgment on all of Plaintiff's remaining claims for retaliation and hostile work environment in violation of Title VII (as described above, the parties did not adequately address the scope of Plaintiff's Rehabilitation Act claims such that the court cannot discern the applicability of Plaintiff's summary judgment arguments to them). The court addresses Plaintiff's Title VII claims in turn.

---

[11] At the February 24, 2014 hearing, Plaintiff explained that he was asserting violations of the Rehabilitation Act based on denial of reasonable accommodation and discrimination, and the FAC appears to assert additional claims based on hostile work environment and retaliation theories. *See* Doc. No. 18, FAC ¶¶ 98, 104. Because the parties have not substantively addressed these claims to the extent based on any events after the September 20, 2011 EEOC Complaint, the court cannot discern whether Defendant's summary judgment arguments as to the June 24, 2011 denial of accommodation apply with equal measure to these other events. The court rejects, however, Defendant's argument that Plaintiff cannot establish a disability discrimination claim where the actions taken against Plaintiff (*i.e.*, the denials of work and office move) occurred before Carethers was aware that Plaintiff suffered from depression and diabetes. Plaintiff's disability discrimination claim appears based not on the fact that he was denied work and forced to move out of his office, but rather the denials of Plaintiff's requests for additional work and a private office as accommodations for his disability.

### 1.   *Retaliation -- Discrete Acts*

An employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation signals omitted)).

To establish a *prima facie* case of retaliation, the plaintiff must show that (1) he opposed an employment practice made unlawful by Title VII; (2) the defendant took an adverse action against him; and (3) there was a causal link between his involvement in this opposition and the adverse action taken by the defendant.[12]  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest v. GTE*

---

[12]  "When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not

(continued...)

*Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's retaliation claim. *See McGinest*, 360 F.3d at 1124. Thus, if Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to offer a legitimate, non-discriminatory explanation for the challenged action. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). If Defendant proffers such a reason, the burden shifts back to Plaintiff to show that Defendant's reason is actually a pretext for discrimination. *Boeing Co.*, 577 F.3d at 1049 (citation and quotation omitted).

"[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). That is, circumstantial evidence of pretext must be specific and substantial, *see Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1163 (9th Cir. 2009), and a plaintiff must do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). "A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that

---

[12](...continued)
motivated [the employer]." *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). The court proceeds under the *McDonnell Douglas* framework because Defendant presented its arguments under this framework.

the employer's explanation is unworthy of credence." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004); *see also Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory [or retaliatory] statements or actions by the employer." *Coghlan*, 349 F.3d at 1095.  Circumstantial evidence requires an additional inferential step to demonstrate discrimination.  *Id*.

Setting aside the untimely discrete acts dismissed above, Plaintiff's retaliation claim is based on the denial of AA for Plaintiff to attend an interview with an EEO counselor at his attorney's office, and the AWOL charge/refusal to reimburse Plaintiff for his phone bills (the denial of meaningful work is addressed below as to Plaintiff's hostile work environment claim).  Defendant argues that Plaintiff cannot establish the required causal link between his protected activity and these adverse personnel actions necessary for his prima facie case given that these adverse actions occurred in 2010 and Carethers was aware of Plaintiff's protected activity since 2006.  *See* Doc. No. 50-1, Def.'s Mot. at 17.  Defendant further argues that even if Plaintiff could establish a prima facie case, Plaintiff is unable to show that Carethers' explanations for the adverse personnel actions are pretexts for retaliation.  *Id.* at 15-17.

Viewing the evidence in a light most favorable to Plaintiff, the court

finds that Plaintiff has established a genuine issue of material fact in support of his prima facie case for both these disparate acts.  Although Defendant is correct that there appears to be no connection between the EEOC Complaint Plaintiff filed in 2006 regarding the VA's failure to award Plaintiff the Assistant Director position and these adverse actions four years later,[13] protected activity is not limited to the filing of an EEOC Complaint.  Rather, protected activity also includes providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to "oppose[]" an employer's discriminatory practices.  42 U.S.C. § 2000e-3(a).  The record makes plain that Plaintiff was engaged in

---

[13] Plaintiff argues that causation can be inferred because "his de facto demotion to GREC followed his EEO charge of discrimination by less than two weeks and that, as Dr. Hasting's cat's paws, Dr. Carethers and Myles Miyamoto [began] a campaign of reprisal, hostility and harassment from then until now."  Doc. No. 62, Pl.'s Opp'n at 33.  It is true that Hastings transferred Plaintiff to GREC two weeks after Plaintiff filed an EEOC Complaint.  But this action is not about such transfer.  Plaintiff does not assert claims based on his reassignment to GREC, and *none* of the events at issue in this action occurred until 2008, over two years after his reassignment.  Thus, the discrete acts that are the basis of Plaintiff's claims are too far removed from the 2006 EEOC Complaint to suggest causation.  *See, e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine months not sufficiently close to create causal link); *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (determining that thirteen-month gap was too long to establish causal connection); *Villiarimo*, 281 F.3d at 1065 (determining that eighteen months was too long to establish causal connection).  Further, Plaintiff has presented no evidence supporting a cat's paw theory -- *i.e.*, that Defendant can be held liable for discrimination even if the official who made the ultimate employment decision (Carethers) did not maintain discriminatory animus, but such decision was influenced by an employee who did have discriminatory animus (apparently Hastings).  *See also Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007) (requiring plaintiff to show that biased individual had a "pervasive influence" on final decision).  There is simply no evidence that Hastings influenced Carethers, especially where the adverse actions Carethers allegedly took occurred two years after Plaintiff had already been working for Carethers.  That Plaintiff's *theory* of retaliation is unsupported by facts does not take away that the claim may nonetheless stand on the facts presented.

protected activity throughout his time at GREC, and causation may be inferred

from "proximity in time between the protected action and the allegedly retaliatory

employment decision." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000)

(quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1371 (9th Cir. 1987)).  The burden

therefore shifts to Defendant to offer legitimate, non-discriminatory explanations

for the challenged actions.

As to the denial of AA, Defendant asserts that Carethers did not

believe that it was necessary for Plaintiff to travel to his attorney's office for a

teleconference.  *See* Doc. No. 50-1, Def.'s Mot. at 16.  Viewed in a light most

favorable to Plaintiff, this explanation is not legitimate -- at the time of the

meeting, Plaintiff was not told he was granted AA for the meeting and he was not

offered a private office at GREC to attend the teleconference.  Rather, Plaintiff was

sent an email *during* the conference that he was granted AA for the meeting itself

and that GREC could have arranged for an office for him to conduct the meeting.

*See* Doc. No. 65-12, Pl.'s Ex. 38.  These facts raise the inference that Carethers'

explanation is not legitimate, or at the very least pretext for an improper purpose.

The court therefore DENIES Defendant's Motion as to denial of AA.

As to the AWOL charge/refusal to provide reimbursement, Carethers

explains both of these acts -- Carethers charged Plaintiff with being absent without

42

leave on September 27, 2010 because Plaintiff failed to notify Carethers that he would be out of the office, Carethers rescinded the AWOL charge once Plaintiff produced records indicating that he called the office, and Carethers denied Plaintiff's request for reimbursement for his phone records after Carethers was told there was no authority for reimbursement.  *See* Doc. No. 51, Def.'s CSF ¶ 13. Plaintiff does not dispute these facts, and fails to provide any facts or even argument explaining why these explanations are pretext.  Rather, the undisputed evidence establishes that Carethers could not have granted Plaintiff's request for reimbursement under any circumstances.  The court therefore GRANTS Defendant's Motion as to the denial of reimbursement.

### 2.    *Retaliation -- Hostile Work Environment*

A hostile work environment is cognizable under the anti-retaliation provisions of Title VII.  *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).  Harassment is actionable only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  In considering whether the retaliatory conduct was "severe or pervasive," the court looks to "all the circumstances, including the frequency of the [retaliatory] conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance.'"  *Kortan v. Cal. Youth Auth.*, 217 F.3d

1104, 1110 (9th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775,

787-88 (1998)).

The court must consider the totality of the circumstances, including

whether the harassment was both objectively and subjectively abusive.  *Freitag*,

468 F.3d at 539.  "The required level of severity or seriousness varies inversely

with the pervasiveness or frequency of the conduct."  *McGinest*, 360 F.3d at 1113

(citation and quotation signals omitted).  While "[i]t is enough if such hostile

conduct pollutes the victim's workplace, making it more difficult for her to do her

job, to take pride in her work, and to desire to stay in her position," to "[s]imply

caus[e] an employee offense based on an isolated comment is not sufficient to

create actionable harassment under Title VII."  *Id.*

The basis of Plaintiff's hostile work environment claim is the

continued denials of meaningful work starting in 2008, which Plaintiff asserts was

in retaliation for his protected activity.  Defendant argues -- in a single sentence --

that Plaintiff cannot establish that the denial of work was retaliatory, *see* Doc. No.

50-1, Def.'s Mot. at 17, presumably because the time lapse between Plaintiff's

protected conduct and the denial of work prevents Plaintiff from establishing his

44

prima facie case, as well as because Carethers reduced Plaintiff's work based on the legitimate reason that Plaintiff did not adequately handle duties involving initiative or diplomacy.  The court rejects Defendant's argument -- as explained above, Plaintiff engaged in protected conduct throughout his time at GREC, raising a genuine issue as to whether he was denied work in retaliation for such conduct. Further, although it is undisputed that Carethers received reports that Plaintiff lacked initiative, required detailed guidance, and appeared to alienate people, *see* Doc. No. 51-2, Carethers Decl. ¶ 8, Carethers has consistently rated Plaintiff's work performance as "fully satisfactory," including the two years during which Carethers assigned Plaintiff substantive work.  *See* Doc. Nos. 64-7 - 64-11, Pl.'s Exs. 10-14.  Viewed in a light most favorable to Plaintiff, this evidence raises an issue of fact whether Carethers' reasons for refusing to assign Plaintiff meaningful work are pretext for unlawful discrimination.  The court therefore DENIES Defendant's Motion for Summary Judgment on Plaintiff's retaliatory hostile work environment claim.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendant's Motion to Dismiss or for Summary Judgment.  Remaining in this action are: (1) Plaintiff's Title VII retaliation claim based on the June 16, 2010

denial of AA; (2) Plaintiff's Title VII retaliatory hostile work environment claim

based on a refusal to assign Plaintiff meaningful work; and (3) Plaintiff's

Rehabilitation Act claims, to the extent based on conduct occurring after the June

24, 2011 denial of requests for accommodation.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 10, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Yonemoto v. Shinseki.*, Civ. No. 11-00533 JMS/RLP, Order Granting in Part and Denying in Part
Motion to Dismiss or for Summary Judgment of Defendant Eric K. Shinseki, Doc. No. 50